UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANTOINE DION HARRIS,

      Plaintiff,

v.

      Civil Action No.: _____

**JURY TRIAL DEMANDED**

LIEUTENANT W. BRINKLEY,

and

    <u>Serve at</u>:

    Western Tidewater Regional Jail
    2402 Godwin Blvd
    Suffolk, VA 23434

SERGEANT LEMUEL JONES,

    <u>Serve at</u>:

    601 Rountable Court
    Suffolk, VA 23434

      Defendants.

**COMPLAINT**

COMES NOW Plaintiff Antoine Dion Harris, by counsel, and moves this Court for Judgment against Defendants Lieutenant W. Brinkley and Sergeant Lemuel Jones, stating as follows:

**I.    INTRODUCTION**

1.    Antoine Dion Harris was handcuffed and seated in a wheelchair when Lieutenant Brinkley ordered Sergeant Jones to spray Mr. Harris with OC, also known as pepper spray. Notwithstanding that Mr. Harris posed no threat justifying the use of the OC, Sergeant Jones sprayed Mr. Harris directly in the face. Mr. Harris immediately buckled over in his chair and

slumped down, coughing and struggling to catch his breath. The intense toxicity of the spray forced multiple correctional officers who were roughly ten feet away from Mr. Harris to leave the room in coughing fits. Meanwhile, Mr. Harris stayed bent over in his chair, still struggling to breathe and in intense pain.  The pain would continue for almost a week as the spray continued to burn Mr. Harris's skin.

## II.  JURISDICTION

2. Jurisdiction exists in this case pursuant to the Eighth and Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1331, 1343. Further, this Court has supplemental jurisdiction, pursuant to 28 U.S.C.§ 1367 (a), over the state law claims. All relief available under the foregoing statutes is sought herein by Plaintiff.

## III.  VENUE

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this district.

4. Assignment to the Norfolk Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this division.

## IV.  PARTIES

5. Plaintiff ANTOINE DION HARRIS ("Mr. Harris") was, at all relevant times, a resident of the Commonwealth of Virginia.

6. At all times relevant hereto, Defendant LIEUTENANT W. BRINKLEY was a lieutenant working within the scope of his employment for the Western Tidewater Regional Jail Authority.  Defendant Brinkley is sued in his individual capacity.

7. At all times relevant hereto, Defendant SERGEANT LEMUEL JONES was a sergeant working within the scope of his employment for the Western Tidewater Regional Jail Authority. Defendant Jones is sued in his individual capacity.

V. FACTS

8. In 2020, Mr. Harris was an inmate at the Western Tidewater Regional Jail ("WTRJ"). WTRJ is a jail facility managed by regional jail authority Western Tidewater Regional Jail Authority and its employees, including, at all relevant times, Defendants Sergeant Jones and Lieutenant Brinkley.

9. On October 12, 2020, Mr. Harris began to experience chest pain, trouble breathing, and shooting pains down his arm. While brushing his teeth, Mr. Harris collapsed and passed out briefly. His cellmate immediately called for correctional officers to come assist him.

10. The correctional officers who responded to the cell, Officers McRae and Johnson, brought a wheelchair with them. Mr. Harris struggled to get up into the wheelchair and needed assistance from the officers. After helping Mr. Harris up, Officers McRae and Johnson placed him in the wheelchair and handcuffed him to transport him to Medical.

11. Once in Medical, Mr. Harris described to a Nurse Stanley how everything hurt as he breathed in. Nurse Stanley merely gave him Tums and Tylenol. No tests were run. Mr. Harris was told to return to this cell.

12. Officers McRae and Johnson then took Mr. Harris, still handcuffed and in the wheelchair, out of Medical. When they arrived at the stairs in Mr. Harris's pod leading to his cell, Mr. Harris told the officers that he could not walk up the stairs and was still in extreme pain. Officer McRae responded that he understood and that Medical "should've scanned" Mr. Harris,

or words to that effect. Officer McRae stated that he would go get the sergeant on duty and apprise the sergeant of the situation.

13. Officer McRae contacted the sergeant on duty, Sergeant A. Gormus, who in turn went to Sergeant Jones and Lieutenant Brinkley, who were in the watch office. Sergeant Jones went to the pod where Mr. Harris was sitting in a wheelchair and handcuffed. Jones told Mr. Harris to walk up the stairs. Mr. Harris again repeated that he was in pain and could not walk up the stairs.

14. Sergeant Jones thereafter returned to the watch office and updated Lieutenant Brinkley on what was occurring.

15. Lieutenant Brinkley thereafter told Sergeants Gormus and Jones to each get a can of OC spray and to use it on Mr. Harris if Mr. Harris would not walk up the stairs.

16. The sergeants returned to the pod area where Mr. Harris sat in his wheelchair, still handcuffed, and surrounded by correctional officers. Sergeant Jones continued to tell Mr. Harris that Mr. Harris was going to have to walk up the stairs, while Mr. Harris continued to respond that he could not do so. During this time, Officers McRae and Johnson, as well as a few other correctional officers including Officer Porter, continued to enter and leave the area Mr. Harris was in.

17. Sergeant Gormus then exited the pod area into the hallway, leaving correctional officers McRae, Johnson, and Porter, as well as Sergeant Jones, as the officers in the pod. The three correctional officers (McRae, Johnson, and Porter) were loitering calmly in the area. None of them made any statements alleging that Mr. Harris was engaging in threatening behavior towards the officers. None of them issued any verbal commands to Mr. Harris regarding any

alleged threatening behavior. None of the officers attempted to physically restrain Mr. Harris. The officers instead wandered in and out of the area where Mr. Harris was located.

18. Meanwhile, Sergeant Jones stood directly in front of Mr. Harris, roughly three feet from Mr. Harris's wheelchair.

19. Sergeant Jones said to Mr. Harris, "I'm telling you one more time, get up the stairs," or words to that effect. Immediately after saying this, and before Mr. Harris could respond or react, Sergeant Jones hit the still handcuffed and wheelchair-bound Mr. Harris with an extended burst of OC spray directly to Mr. Harris's face. Sergeant Jones followed up the unprovoked attack by saying, "you gonna walk now, I bet you you walk now," or words to that effect.

20. Jones was standing mere feet from Mr. Harris as he sprayed Mr. Harris in the face. The strength of the OC spray was so strong that residue of the spray could be seen hitting the wall behind Mr. Harris on the jail surveillance video.

21. The pain from the OC spray was immediate and debilitating. Mr. Harris had trouble breathing, his chest pain intensified, and he collapsed slumped over in the wheelchair, still in handcuffs. The OC spray felt like it was burning the skin off of his body, putting Mr. Harris in excruciating pain. He could not see from the spray getting into his eyes and burning them.

22. The three correctional officers in the room (McRae, Johnson, Porter) reacted to the OC spray as well, despite none of them being in the course of the spray. The intensity of the OC spray caused the officers to begin coughing and covering their faces before leaving the room seconds after the spraying of Mr. Harris. Mr. Harris was left slumped over in his chair trying to wipe the spray off his face, still in handcuffs.

23. After the attack, Officers Johnson and McRae told Mr. Harris that Sergeant Jones "does stuff like that all the time," or words to that effect. Officer McRae further told Mr. Harris that Sergeant Jones "shouldn't have done that," or words to that effect, and encouraged Mr. Harris to get an attorney.

24. Mr. Harris was told he was being taken to the booking area to be "decontaminated" following the OC spray attack. However, Officers Johnson and McRae told Mr. Harris to get the OC spray off his body himself because the officers did not want to touch him. The spray still covering Mr. Harris's body would have burned the officers. The officers just kept telling Mr. Harris to blink so that he could see and they gave him clothing to change into by himself. The correctional officers then called for Sergeant Jones to come to booking but he did not respond.

25. Mr. Harris was then transported to Medical where he reported extreme pain. His vital signs were noted to be elevated.

26. The OC spray stayed on Mr. Harris's body for the next three to four days, continuing to burn him and get into his eyes. He was unable to wash it off effectively despite constantly trying to do so. Mr. Harris submitted a grievance to either Officer Johnson or Officer Porter; he cannot remember which of the two officers it was. However, Mr. Harris did not receive a response to his grievance.

**VI.   COUNTS**

**COUNT I**

**EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS / 42 U.S.C. § 1983**
**(Against Defendants Sergeant Lemuel Jones and Lt. W. Brinkley)**

27. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

28. Defendants' actions alleged in the foregoing Paragraphs of this Complaint constituted the use of excessive force against Mr. Harris.

29. As a direct and proximate result of the use of excessive force by the Defendants, Mr. Harris sustained the injuries and damages previously described in this Complaint.

30. The Defendants used excessive force against Mr. Harris which establishes causes of action for monetary relief consisting of compensatory damages, punitive damages, and costs (including attorneys' fees) to the Plaintiff.

## COUNT II

## STATE LAW BATTERY

**(Against Defendant Sergeant Lemuel Jones)**

31. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

32. Defendant Jones's actions alleged in the foregoing Paragraphs of this Complaint constituted and caused an intentional, unlawful, unwanted and harmful touching (and/or touchings), without legal justification and constituted a battery.

33. Defendant Jones acted consciously in disregard of Mr. Harris's rights, or with reckless indifference to the consequences, and was aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to Mr. Harris.

34. As a direct and proximate result of the battery by Defendant Jones, Mr. Harris sustained the injuries and damages previously described in this Complaint.

35. Defendant Jones committed a battery against Mr. Harris which establishes causes of action for monetary relief consisting of compensatory damages, punitive damages, and costs to the Plaintiff.

## VII. JURY TRIAL DEMANDED

36. Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants Sergeant Lemuel Jones and Lieutenant W. Brinkley in the amount of $200,000, or in such greater amount to be determined at trial, costs (including attorneys' fees on the federal civil rights claims), pre-judgment interest, punitive damages in an amount to be determined at trial and grant such other and further relief that the Court may deem appropriate.

**TRIAL BY JURY IS DEMANDED.**


ANTOINE DION HARRIS

By:   /s/ Daniel Zemel
     Daniel Zemel
     Counsel

Mark J. Krudys (VSB# 30718)
Daniel Zemel (VSB# 95073)
THE KRUDYS LAW FIRM, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA  23219
Phone: (804) 774-7950
Fax:    (804) 381-4458
Email: mkrudys@krudys.com; dzemel@krudys.com
Web:   www.krudys.com
*Counsel for Plaintiff Antione Dion Harris*